IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| MARY E. UNDERWOOD, | : | |
| Claimant, | : : : | |
| v. | : : | CASE NO. 5:08-cv-454-GMF Social Security Appeal |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | : : : | |
| Respondent. | : | |

### ORDER

The Social Security Commissioner, by adoption of the Administrative Law Judge's determination, denied Claimant's application for social security disability benefits, finding that she was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted. Both parties have filed their written consents for all proceedings to be conducted by the United States Magistrate Judge, including the entry of a final judgment directly appealable to the Eleventh Circuit Court of Appeals pursuant to 28 U.S.C. § 636(c)(3).

### LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined

as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). A claimant seeking Social Security disability benefits must demonstrate that he suffers from an impairment that prevents him from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments,

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1, *et seq*.

Under the regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether the claimant is working. If not, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments. Next, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations (the "Listing"). Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

## ISSUES

**I.     Whether the ALJ erred by failing to consider whether Claimant's arachnoiditis met or medically equaled Listing 1.04.**

**II.     Whether the ALJ erred by failing to consider the effect of the severity of Claimant's chronic pain on her ability to work and by failing to apply SSR 03-2P in evaluating Claimant's ability to work.**

**III.    Whether the ALJ erred by rejecting the opinions of treating and examining physicians, failing to apply the correct standards concerning diagnosis and statements of treating physicians, or improperly evaluating and explaining the weight given to medical evidence.**

## Administrative Proceedings

Claimant filed for disability benefits on or about May 21, 2003. (T-30). Claimant's application was denied initially and on reconsideration. *Id*. Claimant then filed a request for a hearing before an administrative law judge (ALJ), which was held on February 2, 2005. *Id*. Subsequent to the hearing, the ALJ found that Claimant was not disabled in a decision dated March 24, 2005. *Id*. Claimant then requested a review of the ALJ's findings by the Appeals Council, which vacated the previous hearing decision and remanded the case for a new hearing, held on April 11, 2006. *Id*. In a decision dated June 1, 2007, the ALJ found that the Claimant was not disabled. (T-27-48). The Appeals Council subsequently denied Claimant's requested review, making the ALJ's decision the final decision of the Commissioner. (R-26).

**Statement of Facts and Evidence**

Claimant alleges that she became disabled on April 6, 2001. (T-30). After examining the medical records, the ALJ determined that Claimant's severe impairments included fibromyalgia, status post right Dequervain's release, reflex sympathetic dystrophy (RSD), high blood pressure, a history of lumbar surgery, a history of knee surgery, and depression, which he found were not severe enough to meet, or medically equal, any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T-32-43). After a thorough review of the record, the ALJ found Claimant capable of performing un-skilled or semi-skilled work at the sedentary exertional level with a host of functional limitations. (T-43-46). Accordingly, the ALJ returned a finding of not disabled. (T-47).

**DISCUSSION**

**I.   Did the ALJ err by failing to consider whether Claimant's arachnoiditis met or medically equaled Listing 1.04?**

Claimant alleges that her impairments meet the requirements for Listings 1.04A and 1.04B. (R-10). Listing 1.04 covers disorders of the spine, including spinal arachnoiditis, "resulting in compromise of a nerve root . . . or the spinal cord."

The Eleventh Circuit Court of Appeals has held that the claimant bears the burden of proving that an impairment or combination of impairments meets or equals a Listing:

> When a claimant contends that he has an impairment meeting the listed impairments, the burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the applicable impairment, or, if in the

>alternative, he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present evidence which describes how the impairment has such an equivalency.

*Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

Here, Claimant has failed to carry her burden of proving the existence of arachnoiditis pursuant to Listing 1.04. The ALJ's Findings particularly address Listing 1.04, noting that the record contains no objective medical evidence of arachnoiditis in the form of an MRI interpreted by a qualified radiologist, tissue biopsy, or in the notes of Claimant's medical examinations. *Id.* Further, the ALJ afforded significant weight to the opinion of Dr. Allen Levine, an orthopedic medical expert, that Claimant did not meet any Listing impairment, including Listing 1.04. *Id.*

### A.     *The ALJ properly evaluated the medical opinions of Claimant's treating physicians.*

Contrary to Claimant's contentions, the ALJ properly evaluated the opinions of Drs. Matovu and Abdulla, including with respect to Listing 1.04. The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a); *see* SSR 96-5p. It is well settled that the opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding it. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985). Further, an ALJ is not required to give significance to opinions of any medical

provider where the opinion relates to issues reserved solely for determination by the Commissioner, including any physician's opinion which states that he finds the claimant disabled. 20 C.F.R. § 416.927(e); SSR 96-5p.

Here, the ALJ acknowledged but properly declined to accept Dr. Matovu's finding that Claimant met the criteria for Listing 1.04. The ALJ set forth several reasons constituting good cause as to why he discredited Dr. Matovu's opinion, including that Dr. Matovu is a board certified specialist in family medicine and has no special expertise in dealing with musculoskeletal impairments. (T-40-41).

Further, the ALJ's opinion is entirely consistent with the medical opinion of Dr. Abdulla, to which the ALJ afforded significant weight. (T-45). The ALJ recounts that in July of 2001, Dr. Abdulla opined, for purposes of Claimant's disability insurance company, that Claimant was disabled but he did expect a fundamental or marked change in the future. *Id*. Thereafter, in February 2003, Dr. Abdulla opined that Claimant could perform sedentary work. *Id*. For all of these reasons, no error is found in the ALJ's treatment of the opinions of Claimant's physicians.

### *B. The ALJ properly evaluated Claimant's credibility.*

While Claimant's brief extensively sets forth evidence from her many medical examinations that she alleges supports her spinal disorder, this evidence is based largely on Claimant's own complaints of physical pain and limitations in her activities of daily living.

Here, the ALJ properly evaluated Claimant's credibility and found it wanting.

Regarding credibility, SSR 96-7p reads:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

The ALJ must "clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotations and citations omitted). While "[t]he credibility determination does not need to cite particular phrases or formulations," it must sufficiently indicate that the ALJ considered the claimant's medical condition as a whole. *Id.* (quotations and citations omitted).

Here, in evaluating Claimant's credibility, the ALJ states, "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." (T-43-44). Thereafter, the ALJ elaborates, stating:

> [T]he undersigned assigns little credibility to the claimant's subjective allegations, as they are not reasonably consistent with the nature of the objective evidence or other evidence of record. The undersigned also notes the claimant's excessive negativity as to her functional abilities. While the claimant does have some objective limitations which have been accounted for, and the undersigned has given the claimant the benefit of the doubt as to a number of her contentions, there does not seem to be any reason why she should not be able to work within the residual functional capacity adjudged herein, if she were so inclined.

(T-46). The ALJ explicitly articulates several reasons for discounting Claimant's credibility, including Claimant's work history showing a lack of motivation to work and her drug seeking behavior. (T-44-45). It is clear that the ALJ properly evaluated Claimant's medical record as a whole in accordance with SSR 96-7p when making his credibility determination.

As stated above, our role in this case is narrow: "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]. Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The ALJ's conclusion that Claimant's impairments fail to meet or equal the criteria for Listing 1.04 is reasonable and is supported by substantial evidence. Accordingly, no error is found.

## II.     Did the ALJ err by failing to consider the effect of the severity of Claimant's chronic pain on her ability to work and failing to apply SSR 03-2P in evaluating Claimant's ability to work?

Claimant alleges that she fell, sprained her left ankle, injured her left knee, and developed Reflex Sympathetic Dystrophy Syndrome (RSDS).  (R-10).  Claimant makes several, disparate arguments in support of her contention that the ALJ erred by failing to consider the severity of Claimant's pain on her ability to work and by failing to apply SSR 03-2p in evaluating her ability to perform substantial gainful activity.  *Id.*

Contrary to Claimant's contention that the ALJ did not consider the severity of Claimant's knee, leg, and ankle pain, the ALJ thoroughly discussed Claimant's various trips to the emergency room and her doctors visits where Claimant complained of pain.  (T-32-40).  Further, the ALJ found Claimant's RSDS to be a severe impairment but concluded that it did not meet or medically equal any of the Listings.  (T-32-43).

SSR 03-2p states:

> Claims in which the individual alleges RSDS/CRPS are adjudicated using the sequential evaluation process, just as for any other impairment.  Because finding that RSDS/CRPS is a medically determinable impairment requires the presence of chronic pain and one or more clinically documented signs in the affected region, the adjudicator can reliably find that pain is an expected symptom in this disorder.

To determine the severity of the impairment and the individual's RFC, SSR 03-2p refers to

making a credibility determination pursuant to SSR 96-7p. As discussed in Section I, Part B above, the ALJ properly discounted Claimant's credibility in accordance with SSR 96-7p. Claimant briefly contends that her fibromyalgia imposed a heightened duty on the ALJ when assessing Claimant's credibilit. (R-10). However, Claimant cites no legal authority in direct support of this allegation.

Claimant further takes issue with the ALJ's failure to adopt the opinions of Dr. Matovu and Dr. Wright, who would, Claimant contends, find her to be totally disabled based on an inability to perform even sedentary work. (R-10). As discussed in Section I, Part A above, an ALJ is not required to give significance to opinions of any medical provider where the opinion relates to issues reserved solely for determination by the Commissioner, including any physician's opinion which states that he finds the claimant disabled. Here, the ALJ was not required to accept the disability determinations of Drs. Matovu or Wright; instead, he properly evaluated them as opinions of Claimant's treating physicians.

Substantial evidence supports the ALJ's finding that Claimant is capable of performing sedentary work with certain functional limitations. No error is found.

**III.    Did the ALJ err by rejecting the opinions of treating and examining physicians, failing to apply the correct standards concerning diagnosis and statements of treating physicians, or improperly evaluating and explaining the weight given to medical evidence?**

Claimant repeats her contention that the ALJ improperly evaluated the opinions of her treating physicians, namely, Dr. Abdulla and Dr. Matovu. (R-10). Claimant states that "sufficient diagnostic findings" and "numerous objective findings" support her contention that she is unable to work. *Id.* All of Claimant's arguments in this Section have been previously stated and addressed.

## CONCLUSION

Based on the evidence presented, no basis is found for Claimant's contention that the ALJ committed error. The record fails to reveal any evidence that the ALJ acted outside of his judicial role in determining the extent of Claimant's disability.

**WHEREFORE**, **IT IS ORDERED** that the decision of the Defendant Commissioner of Social Security be **AFFIRMED**.

THIS the 6th day of August, 2009.

                                          S/ G. MALLON FAIRCLOTH
                                          UNITED STATES MAGISTRATE JUDGE

lml